THOMAS B. MUSGRAVE, Respondent, v. WILLIAM F. BUCKLEY, Appellant.

It was agreed between the parties that plaintiff should subscribe on joint account for a certain amount of railroad bonds offered for sale by a construction company, plaintiff to advance the money to pay the installments and to carry the subscription until disposed of for their joint benefit. By the terms of the subscription ten per cent of the subscription price was to be paid down and the balance in installments as called for. In case of default in payment of any installment the company had the option to forfeit the subscription and all installments previously paid. Plaintiff paid the ten per cent down, but the bonds having declined in the market refused to pay subsequent installments, and the parties agreed to let the company exercise its option, which it did. In an action to recover one-half of the installment paid, held, that defendant was not bound to agree to the forfeiture and could have advanced the money

and paid the calls, but having decided not to do so and the forfeiture· having been declared with his concurrence, he was liable to pay his share of the loss.

(Argued May 2, 1889; decided June 4, 1889.)

APPEAL from judgment of the General Term of the Court· of Common Pleas in and for the city and county of New York, entered upon an order made June 7, 1886, which affirmed a· judgment in favor of plaintiff, entered upon the report of a· referee.

The nature of the action and the facts are sufficiently stated in the opinion.

*John E. Parsons* for appellant.   As the payment by the· plaintiff of the calls was not only thus the sole consideration for the defendant's sharing with him the profits or losses, but was necessarily to precede it in point of time, the former was a condition precedent of the latter.   (*Grant* v. *Johnson,* 5 N. Y. 247; *Pordage* v. *Cole,* 1 Saund. 320.)   Having broken his agreement the plaintiff had no right to hold the defendant to responsibility for one-half of the loss which was due to his· own default.   (*Smith* v. *Brady,* 17 N. Y. 173, 187; *Crane* v. *Knubel,* 61 id. 645.)   The concurrence by the defendant subsequent to June 1, 1882, in the forfeiture of the subscrip-· tion and of the $20,000 installment which had been paid, operated neither as a waiver of performance by the plaintiff of his agreement nor as a release to him for his breach.. (*Underwood* v. *Farmers' Ins. Co.,* 57 N. Y. 500; *Ripley* v. *A. Ins. Co.,* 30 id. 136; *Crane* v. *Knubel,* 61 id. 645; *Fallon·* v. *Lawler,* 102 id. 228.)

*George W. Ellis* for respondent.   When two persons enter into a joint venture, and the venture comes to an end with a loss, an obligation arises from the nature of the original relation that each will bear equally the loss; and if one party has ·stood more than his share, he can require his associate to contribute.   (Story on Eq. Jur. §§ 504, 505. Willard's Eq. [Potter's ed.] 118; 1 Wait's Actions and Defenses, 182; 2 id.

288–303; 3 id. 172; 5 id. 124; 4 Johns. Ch. 334; 57 N. Y. 331; *Finley* v. *Stewart,* 56 Penn. St. 183; *Guibert* v. *Saunders,* 10 N. Y. S. R. 43; *Bissell* v. *Harrington,* 18 Hun, 81; *Cooper* v. *Eyre,* 1 H. Black. 48; *Holmes* v. *United Ins. Co.,* 2 Johns. Cas. 329; Collyer on Part. [6th ed.] § 18; Ewel Lindley on Part. [2d Am. ed. 1888] 385; 3 Kent's Com. 28; 'Taylor on Ev. [8th Eng. ed.] 203; *Cunningham* v. *Littlefield,* 1 Edw. Ch. 104; *King* v. *Barnes,* 4 N. Y. 893; *Whitcomb* v. *Converse,* 119 Mass. 38; *Munro* v. *Whitman,* 8 Hun, 553; *Hodgman* v. *Smith,* 13 Barb. 302; *Neudecker* v. *Kohlberg,* 3 Daly, 410; Wentworth's Lindley on Part. 402, 403.) When the plaintiff was taken into this venture by the defendant they became partners in the venture. The failure, without good reason of either, from that time forward to do what he had agreed to do would make the offending party liable in damages for breach of his agreement, but such a failure was not, in any sense, a breach of a condition precedent which would work a forfeiture of his rights already fixed. (20 N. Y. 432; 45 id. 464; *Boyd* v. *Mynatt,* 4 Ala. [N. S.] 79, 82; Parsons on Part. [3d ed.] 384; *Hartman* v. *Woehr,* 18 N. J. Eq. 383; *Stoughton* v. *Lynch,* 1 Johns. Ch. 467; Story on Part. § 203.) The unnecessary outlay of further money on or after January, 1882, in the payment of further calls would have been prejudicial to the joint account, and for that reason each party was bound in good faith to the other not to do it or ask it to be done. (Story on Part. § 183; 110 N. Y. 73; 52 How. 48; 16 Johns. 491; 3 K. & J. 88; 81 N. Y. 28.) Defendant expressly consented to let the joint venture be ended, by allowing the construction company to forfeit the subscription and the installment already paid. (*Butterfield* v. *Cowing,* 21 N. Y. S. Rep. 500; 7 Wait's A. & D. 361.) A breach of an agreement to carry securities, pledged as collateral for the purchase-price, is only regarded as the breach of a condition subsequent to the purchase, entitling the customer to show damages, if he can, but never forfeiting the amount actually advanced by the banker. (*Capron* v. *Thompson,* 86 N. Y. 418; *Gruman* v. *Smith,* 81 id. 27;

*Colt* v. *Owens*, 90 id. 368; *Wright* v. *Bk. of Metropolis*, 110 id. 237.) Where time is not of the essence of a contract, in order to forfeit the rights of one of the parties thereunder, notice must be given by the other requiring performance within some reasonable time therein specified, and that in case of default his rights will be deemed abandoned. (*Myers* v. *De Mier*, 52 N. Y. 647; *Buck* v. *Buck*, 18 id. 341; *Avery* v. *Bowden*, 5 E. & B. 714; *Miesel* v. *Globe Ins. Co.*, 76 N. Y. 119; *Thomas* v. *Fleury*, 26 id. 26.)

HAIGHT, J. This action was brought to recover one-half of the losses sustained by reason of a forfeiture of a subscription on joint account for $200,000 of the bonds of the New York, West Shore & Buffalo Railway Company.

The North River Construction Company had undertaken to build and equip for the New York, West Shore & Buffalo Railway Company a double track railway from a point opposite of the city of New York, along the west shore of the Hudson river and the south bank of the Mohawk river, and thence to the city of Buffalo, and to receive in payment therefor the mortgage bonds and capital stock of the railway company. The North River Construction Company had opened a subscription book for the bonds of the railway company, in which the subscribers undertook to pay the construction company par and accrued interest for the bonds to the amount set opposite their respective names, upon the conditions that ten per cent of the subscription shall be paid upon call, and thereafter not more than ten per cent shall be called at any one time, and on at least ten days' notice. A default in the payment of any installment entitled the company, at its option, to forfeit the subscription and all installments previously paid. Each subscriber, upon the payment of the entire amount subscribed by him, was entitled to receive the bonds subscribed for, and, in addition thereto, fifty per cent of the par of his subscription in certificates representing full paid capital stock of the railway company. The defendant subscribed for the bonds for the par value of $200,000, and paid the first install-

ment of ten per cent, amounting to the sum of $20,000. The plaintiff and defendant had entered into an arrangement to the effect that the subscription so taken in the name of the defendant should be owned and disposed of for their joint account, and, as a consideration therefor, the plaintiff agreed to furnish the money with which to pay the installments and to carry the subscription until disposed of for their mutual benefit. Pursuant to such arrangement, the plaintiff paid to the defendant $20,000, the amount of the first installment paid by him. At the time of this agreement the bonds were considered valuable, but thereafter and about the 1st of November, 1881, they fell below par. In January, 1882, they were worth but ninety cents on the dollar, and in the following April only about seventy cents. On the 6th day of January, 1882, the construction company made a call for ten per cent of the subscription, and on the eighth of April made another call of like amount. The plaintiff refused to advance the money for these calls, and thereafter, and on the 15th day of August, 1882, the construction company exercised its option and declared the subscription and the payment made thereon forfeited. The defendant claims that the plaintiff ought not to recover for the reason that he refused to advance the money with which to pay the January and April calls, thereby causing a default which permitted the construction company, at its option, to forfeit the subscription and installment paid; and that the fact that the market-value of the bonds had declined formed no excuse for such default. We do not consider it necessary to enter upon a discussion, or to determine the legal propositions thus raised, for we consider them fully answered by the fact that the plaintiff and defendant conferred together in reference to the calls for installments and agreed to let the construction company avail itself of its option to forfeit the subscription and the amount paid thereon; and thereafter the option was exercised by the company and the forfeiture made, with the concurrence of both the plaintiff and the defendant. These facts were found by the referee upon a conflict in the testimony. They are in accordance with the

testimony of the plaintiff and have been affirmed by the General Term, and are not subject to further review in this court. (Code of Civil Procedure, § 1337.)

The defendant was not bound to agree to the forfeiture; he was under no obligation to do so unless he thought it was for the best interests of himself and associate. There was no forfeiture until the 15th day of August, 1882; true, there had been a default as early as the January before, but a forfeiture did not take place at the time there was a default. The forfeiture was only at the option of the construction company, and, until that company saw fit to exercise it, the defendant could have paid the calls and prevented a forfeiture. It is not a question of waiver or estoppel; it is a question of agreement by the parties as to what was best under the circumstances. At the time they agreed to submit to the forfeiture either party was at liberty to advance the money and pay the calls. The question was, whether it was advisable to do so. At the time of the January call the bonds had depreciated to such an extent that the $20,000 paid in at the time of the subscription was an entire loss; and the decline at the time of the second call showed that there would be an additional loss of about $40,000 if the calls were paid. Under these circumstances it is not surprising that the parties reached the conclusion that they had rather submit to a forfeiture and lose the $20,000 than pay the calls then amounting to $40,000 and lose that also.

The judgment should be affirmed, with costs. So ordered.
All concur.
Judgment affirmed.